IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

No. 20-1030

**FILED**

**April 26, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

In Re K. S., B. M., and O. S.

Appeal from the Circuit Court of Monongalia County
The Honorable Cindy S. Scott, Judge
Case Nos. 19-JA-31, 19-JA-32, and 19-JA-33

VACATED AND REMANDED WITH DIRECTIONS

Submitted: February 16, 2022
Filed: April 26, 2022

Cheryl L. Warman, Esq.
Morgantown, West Virginia
Attorney for Petitioner S. S.


Stephanie Nethken, Esq.
Westover, West Virginia
Guardian ad Litem for K. S., B. M., and
O. S.


P. Todd Phillips, Esq.
Lyons Phillips Legal Group PLLC
Morgantown, West Virginia
Attorney for Interested Party G. H.

Patrick Morrisey, Esq.
Attorney General
Katica Ribel, Esq.
Assistant Attorney General
Fairmont, West Virginia
Attorneys for West Virginia
Department of Health and Human
Resources

JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE ALAN D. MOATS sitting by temporary assignment.

SYLLABUS BY THE COURT

1.     "'When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.' Syl. [Pt. 1], *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996)." Syl. Pt. 1, *In re S. W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).

2.     "[T]he circuit court is required to conduct a disposition hearing, pursuant to West Virginia Code § 49-6-5 (1999) and Rules 33 and 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, at which the issue of such termination is specifically and thoroughly addressed." Syl. Pt. 3, in part, *State ex rel. W. Va. Dep't of Health & Hum. Res. ex rel. Chastity D. v. Hill*, 207 W. Va. 358, 532 S.E.2d 358 (2000).

3.     "The standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syl. Pt. 6, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

4.     "Even when an improvement period is granted, the burden of proof in a child neglect or abuse case does not shift from the State Department of Welfare to the

parent, guardian or custodian of the child. It remains upon the State Department of Welfare throughout the proceedings." Syl. Pt. 2, *In re S. C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981).

5. "At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

6. "In making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B. H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014).

7. "Where a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by West Virginia Code § 49-6-5(a)(6) (1998) (Repl.Vol.2001) on the record or in the order, the order is inadequate." Syl. Pt. 4, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

8.     "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

9.     "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

10.     "In cases where there is a termination of parental rights, the circuit court should consider whether continued association with siblings in other placements is in the child's best interests, and if such continued association is in such child's best interests, the court should enter an appropriate order to preserve the rights of siblings to continued contact." Syl. Pt. 4, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

WOOTON, J.:

This is an appeal from the Circuit Court of Monongalia County's December 3, 2020, order terminating petitioner-mother S. S.'s (hereinafter "petitioner") parental rights to minor children K. S., B. M., and O. S.[1] Petitioner's three children were removed from her care and placed with their respective biological fathers upon evidence that petitioner was abusing methamphetamines. Petitioner stipulated to abuse and/or neglect and embarked upon post-adjudicatory and dispositional improvement periods, relapsing twice during the pendency of the proceedings despite extended periods of apparent sobriety. As a result of her second relapse at the beginning of her dispositional improvement period, the Department of Health and Human Resources ("hereinafter "DHHR") sought termination of her parental rights; the guardian ad litem and prosecuting attorney, however, both recommended termination of only petitioner's custodial rights to allow her to complete her recovery. Despite the failure of the prosecutor to present any evidence on DHHR's behalf at the dispositional hearing, the circuit court found there was no reasonable likelihood the conditions of abuse and neglect could be remedied in the near future due, in part, to petitioner's "inconsistency" throughout the proceedings and terminated her parental rights.

---

[1] Because this case involves minors and sensitive matters, we follow our longstanding practice of using initials to refer to the children and the parties. *See, e.g., State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

1

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we conclude that the circuit court erred in terminating petitioner's parental rights in absence of any evidence being presented by DHHR at the dispositional hearing. We therefore vacate the dispositional order terminating petitioner's parental rights and remand for further proceedings consistent herewith.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner is mother to three children: twelve-year-old K. S., eight-year-old B. M., and five-year-old O. S., each of whom have different biological fathers.[2] While engaged in family court proceedings with S. M., B. M.'s biological father, which required drug testing,[3] petitioner tested positive for methamphetamines. As a result, in February 2019, the children were removed from petitioner's home, placed with their respective biological fathers, and an abuse and neglect petition filed. Petitioner stipulated to abuse and/or neglect in March 2019 and was adjudicated as an abusive/neglectful parent. The circuit court granted a three-month[4] post-adjudicatory improvement period in April 2019, which was extended for an additional three months in July 2019. From April 2019 through

_____

[2] G. H., K. S.'s biological father, is the only father to appear in this appeal.

[3] The precise nature of these proceedings is not apparent from the appendix record.

[4] The length of the improvement periods is not clear from the orders, but presumably tracked the time periods requested by petitioner's counsel.

2

August 2019, petitioner had three positive drug screens: two in April and one in August.[5] Her completed drug screens were otherwise negative in those months as well as the entirety of May, June, and July 2019. Accordingly, her improvement period was continued for an additional three months in September 2019.

In September 2019, petitioner relapsed and entered a 28-day program with the Center for Hope and Healing in Morgantown, West Virginia. She was discharged at the end of October and tested negative for substances for the remainder of 2019. Her negative drug screens were acknowledged at a review hearing in January 2020 and the mediation of parenting plans between petitioner and the respective fathers was ordered with the goal of reunification. Petitioner then had one positive drug screen in January but tested negative in February 2020.

In March 2020, a post-dispositional improvement period was ordered. *See* W. Va. Code § 49-4-610(3) (2015) (permitting improvement period as disposition). Her visitation with the children lapsed, however, in January because her "units" for visitation had been expended.[6] Shortly thereafter, in early to mid-March 2020, petitioner again relapsed resulting in two positive drug screens, at which point drug testing was

---

[5] Petitioner also had two "no shows" in April, one in June, and three in August, shortly before her September relapse. The "no show" in June was rescheduled and therefore excused.

[6] This appears to refer to the staffing and budgeting assigned to the case by DHHR relative to agency-supervised visitation but is unclear from the record.

discontinued due to Covid-19 concerns; any efforts to reinitiate visitation appear to have also been abandoned as a result of the positive drug screens. Despite previously planning for reunification and a potential "disposition 5"—presumably referring to termination of only custodial rights [7]—in May 2020, DHHR determined that it would recommend petitioner's parental rights be terminated and requested final disposition. A final dispositional hearing on July 21, 2020, was cancelled due to Covid-19 and rescheduled for October 30, 2020. Petitioner ostensibly had no drug screening, visitation, or services since early 2020.

At the dispositional hearing, the guardian ad litem recommended a "disposition 5," although each of the fathers opposed it and requested termination.[8] The assistant prosecutor likewise advised the court that she believed a "disposition 5" to be the most appropriate and least restrictive disposition, but that DHHR disagreed and was requesting termination. The prosecutor explained:

> The Department, through it's [sic] court summary, is recommending termination. *I've advised the Department that a disposition five is the most appropriate solution. . . .* [Petitioner], actually, was doing very well at the beginning of this case. It's been pending for more than a year. She relapsed recently right before COVID. . . .
>
> Based on my—I've been on this case for several, several—for the entirety, and before [the CPS Supervisor] left, she, actually,

---

[7] *See infra* n.13.

[8] G. H., father of K. S., argued expressly that anything short of termination would serve as a vehicle for petitioner to continue to "harass" him. S. M., B. M.'s father, through counsel, noted that his then-girlfriend, T. W., wanted to adopt B. M. *See infra* n.10.

4

recommended a disposition five, but since [she] has left the Department, now I have a new supervisor. Unfortunately, I'm reading a black and white document, it is clear that termination for the Department after a dispositional staffing, termination was being recommended. *I advised the Department that a disposition five would be the least restrictive as she was attempting to address the issue that led to the filing of the petition.* Unfortunately, the addiction got the better of her and she relapsed.

. . . .

. . . Your Honor, this case has been pending for so long that I can't keep it open anymore. So, I am asking the Court to either do two things, grant a dispo five, which is my recommendation as a prosecutor or to terminate her parental rights is what the Department wants.

*I don't want to present any testimony*, but I have a feeling that [G. H.'s attorney] might be calling [the CPS worker] . . . . I will leave the decision of [petitioner's] parental rights in the discretion of the Court. If you have any questions since you're new, Your Honor, but me and the GAL have been on this case since the beginning and we can offer insight into what's going on, but *I do believe that a dispo five is the least restrictive alternative available to this Court today.*

(emphasis added). After this statement, the prosecutor called no witnesses nor introduced any evidence on behalf of DHHR.

Petitioner then called her therapist as a witness and testified on her own behalf. Petitioner's therapist testified that, although petitioner had some difficulty early in the process, she had made tremendous progress and was faithfully attending therapy even though she had been warned that termination was likely imminent. Petitioner testified to a newfound awareness of her dependency issues and her intention to continue with therapy

5

regardless of whether her children were returned to her care. Petitioner testified that she had obtained a car, housing with room for all three children, distanced herself from individuals contributing to her issues, and obtained a job at Ruby Memorial Hospital, although she was not working at the time due to impending carpal tunnel surgery. Both she and her therapist testified regarding her successful completion of services and various substance abuse programs but admitted to two episodes of relapse which her therapist indicated was not uncommon in long-term treatment of substance abuse. Petitioner's counsel asked that petitioner be granted additional time on her dispositional improvement period, which had expired approximately two months prior to the dispositional hearing. [9]

The circuit court ordered termination of petitioner's parental rights and that each child be permanently placed with his or her biological father. [10] In explanation of its ruling, the circuit court briefly referenced a letter allegedly written by K. S. apparently expressing frustration with petitioner's "inconsistency," but provided no further detail

---

[9] Although petitioner made no express objection to DHHR's failure to present evidence, in making her closing argument, her counsel stated: "It's one thing to just make a certain statement that a certain outcome is in the best interests of the children, but it's another thing for there to be actual evidence." She also noted that "other than the statements by the fathers that it is in the best interest of the children[,] what evidence do we have that it would be? None."

[10] In their required updates to this Court pursuant to West Virginia Rule of Appellate Procedure 11(j), DHHR and the guardian ad litem advise that the custodial rights of S. M., biological father of B. M., have been terminated pursuant to West Virginia Code § 49-4-604(c)(5) (2020) and that B. M. remains in the custody of his stepmother, T. W. Neither petitioner nor G. H. provided this Court with the status updates required by Rule 11(j).

about the content of the letter.[11] In further justifying its termination of petitioner's parental rights, the circuit court referenced 1) the "last 20 months of inconsistencies"; and 2) the "timelines." The court granted visitation to petitioner at the discretion of the fathers, stating: "[I]t's in their discretion, but with an absolute suggestion, great suggestion, that that post-termination visitation occur at a frequency and duration that is in the best interest of the children."

As its basis for termination of petitioner's parental rights, the circuit court's order states that "it is necessary to involuntary [sic] terminate the parental rights of [petitioner] as this case has been pending for twenty-one (21) months, [petitioner] has been inconsistent throughout the case, and termination is in the children's best interests." It then summarily finds that petitioner "will not be able to remedy the issues that led to the filing of the petition in the near or distant future and it is necessary for the welfare of the children" to terminate her rights. As to visitation, the order states only that "any post-termination contact . . . be at the discretion of [the children's] biological fathers."[12] This appeal followed.

---

[11] This letter is not contained in the appendix record, nor does it appear to have been formally introduced into evidence during the dispositional hearing; however, it appears the guardian ad litem provided it to the circuit court.

[12] The order made no provision regarding sibling contact. *See* text *infra*.

7

## II. STANDARD OF REVIEW

As is well-established,

> "[w]hen this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl. [Pt. 1], *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996).

Syl. Pt. 1, *In re S. W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015). With these standards in mind, we proceed to the parties' arguments.

## III. DISCUSSION

With respect to the circuit court's termination of her parental rights, petitioner assigns as error both DHHR's failure to present evidence at the dispositional hearing and the circuit court's refusal to order a less restrictive "disposition 5."[13] DHHR

---

[13] The term "disposition 5" used frequently by the parties herein is a reference to the language of West Virginia Code § 49-4-604(c)(5) which is one of the six statutory dispositional alternatives. Subsection 604(c)(5) provides:

> Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child *temporarily* to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person *who may be appointed guardian by the court*.

(Emphasis added). However, as explained below, because the children were placed with their biological fathers, the parties appear to have been contemplating a simple termination of petitioner's *custodial* rights, rather than a guardianship or DHHR custody. Such a disposition would appear to be more appropriately governed by subsection 604(c)(6), (continued . . .)

8

fails to address the first issue in its brief, arguing instead that the termination was well-supported by the required findings as set forth in the circuit court's order. The guardian ad litem—despite also recommending a "disposition 5" below—now argues that the circuit court committed no error in terminating petitioner's parental rights because the circuit court's order referenced the requisite findings to support termination. G. H., father of K. S., filed a brief in support of the circuit court's termination of petitioner's parental rights which largely details various points of contention between him and petitioner throughout the case.[14]

## A.    DHHR'S FAILURE TO PRESENT EVIDENCE AT DISPOSITIONAL HEARING

We begin with DHHR's failure to introduce evidence at the dispositional hearing. As indicated above, DHHR offers no response to petitioner's assignment of error in this regard, nor does it provide an explanation as to why no evidence was presented. At oral argument, however, DHHR asserted that the cumulative circuit court record,

---

rather than (c)(5). *See In re R.G.,* No. 20-0509, 2021 WL 2366886, at *1 n.4 (W. Va. June 9, 2021) (memorandum decision) ("While the parties label the child's placement with his father at the conclusion of the mother's proceeding as a section 5 disposition, the child was not placed in a guardianship—a natural fit parent is not a guardian appointed by the court. Because the child was placed in the 'permanent sole custody of the nonabusing parent,' it appears that the circuit court conducted the mother's disposition under § 49-4-604(c)(6) but did not terminate her parental rights.").

[14] Consistent with the circuit court's designation, G. H. characterizes himself as an "interested party." However, he plainly qualifies as a "respondent" in this matter pursuant to West Virginia Code § 49-1-201 (2018) which defines respondents as including "all parents, guardians, and custodians identified in the child abuse and neglect petition who are not petitioners or co-petitioners."

particularly the most recent DHHR case summary including historical drug screening results, a letter allegedly written by K. S. discussed *infra*,[15] along with *petitioner's* evidence, was a sufficient basis upon which to determine the proper disposition.

This Court appears to have primarily addressed evidentiary defects in the dispositional process when hearings have not been conducted at all. Generally, this Court has held:

> [T]he circuit court is required to conduct a disposition hearing, pursuant to West Virginia Code § 49–6–5 (1999) and Rules 33 and 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, at which the issue of such termination is specifically and thoroughly addressed.

Syl. Pt. 3, in part, *State ex rel. W. Va. Dep't of Health & Hum. Res. ex rel. Chastity D. v. Hill*, 207 W. Va. 358, 532 S.E.2d 358 (2000). In fact, even when there have been stipulations entered which would seemingly obviate the need for the hearing, this Court has still required the hearing to be conducted. *See* Syl. Pt. 2, *In re Beth Ann B.*, 204 W. Va. 424, 513 S.E.2d 472 (1998) ("In a child abuse and/or neglect proceeding, even where the parties have stipulated to the predicate facts necessary for a termination of parental rights, a circuit court must hold a disposition hearing, in which the specific inquiries enumerated in Rules 33 and 35 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* are made, prior to terminating an individual's parental rights."). Accordingly,

---

[15] *See also* n.11 *supra*.

the Court has made clear that a dispositional hearing is a necessary and vital part of abuse and neglect proceedings.

More importantly, this Court has held that "[t]he standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syl. Pt. 6, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). In *State v. C.N.S.*, 173 W. Va. 651, 319 S.E.2d 775 (1984), we reiterated that

> [t]ermination of parental rights, the most restrictive alternative, is authorized only "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child." W. Va. Code § 49–6–5(a)(6). *The State must produce clear and convincing evidence to support this finding before the court may sever the custodial rights of the natural parents.*

*Id.* at 656, 319 S.E.2d at 780 (emphasis added). Furthermore, we have held that "[e]ven when an improvement period is granted, the burden of proof in a child neglect or abuse case does not shift from the [DHHR] to the parent, guardian or custodian of the child. It remains upon the [DHHR] *throughout the proceedings*." Syl. Pt. 2, in part, *In re S. C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981) (emphasis added).

In the instant case, as indicated, DHHR offers no rationale or excuse for failing to call any witnesses or introduce documentary evidence at disposition. Instead, it argues that the circuit court's access to written DHHR case summaries, which include

11

historical drug testing results, is a viable surrogate for sworn testimony or other evidence. Notably, however, despite executing authorizations permitting DHHR to obtain her treatment program drug testing results for the period of time DHHR and/or its contractors were not offering testing, it appears either to have not availed itself of that opportunity, or worse, did so and failed to introduce it as evidence to allow the circuit court to assess petitioner's current sobriety.

In order to assess a parent's degree of improvement and make the required statutory findings for purposes of disposition, the circuit court must be presented with affirmative, cogent evidence by the party with the burden of proof. We have held:

> At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context *of all the circumstances of the case* to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991) (emphasis added). This determination can only be made on the basis of properly admitted, sworn evidence which reveals information such as a respondent parent's current functional status, his or her progress and/or set-backs during improvement periods, his or her parenting and lifestyle plans and prognosis, the children's current needs, developmental status, and the adequacy of their placement and/or placement plan. As this Court recently explained:

> When conducting a disposition hearing, the circuit court acts in two distinct capacities: first, as a gate keeper, ruling on

12

> the admissibility of evidence; and second, as the fact-finder, gathering information and affording weight to that evidence. At the conclusion of this hearing, the circuit court must determine "the appropriate permanent placement of a child adjudged to be abused and/or neglected."

*In re S. C.*, 245 W. Va. 677, ___, 865 S.E.2d 79, 94 (2021) (footnote omitted). While this requirement "does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden," it must take the form of affirmative evidence presented or adopted by the party with the burden of proof—DHHR—upon which the circuit court may base its disposition. *S. C.*, 168 W. Va. 366, 284 S.E.2d 867, syl. pt. 1, in part.

In that regard, DHHR's newly formed insistence that the cumulative record which existed primarily by way of written DHHR case summaries was a sufficient basis upon which to base disposition is unpersuasive. The case summary presented to the circuit court at disposition contained within the appendix record is scarcely more than personal, administrative "notes" crafted by the caseworker during multi-disciplinary team meetings, the most recent of which had occurred four months prior to disposition. The most recent drug testing information included in the most recent summary was seven months old. The case summary otherwise simply recapped the events leading up to the petition and the services petitioner completed. These case summaries were otherwise frequently peppered with somewhat inscrutable anecdotes reported by the fathers at the multi-disciplinary team

13

meetings, as well as *ad hominem* criticisms of petitioner's conduct at unknown times[16] throughout the pendency of the case with little specificity, context, or source. None of the fathers testified at disposition, nor obviously did the caseworker(s) who crafted these summaries.

The scant nature of the case summaries aside, the stale nature of the summaries' information appears occasioned almost entirely on petitioner's truncated dispositional improvement period resulting from administrative DHHR occurrences and Covid-19 delays and developments. For approximately seven months leading up to the dispositional hearing, petitioner had become involuntarily disengaged from any services, treatment, screening, or visitation—depriving her of any meaningful method of demonstrating improvement. Well before her March relapse, petitioner's authorization for supervised visitation with the children—a critical element of an improvement period—had "run out" despite visitation being court-ordered. "Visitation between parent and child during an out-of-custody improvement period is important in evaluating whether a parent

---

[16] We note however that to whatever extent it is apparent when some of the non-drug related conduct described in the DHHR summary occurred, much of it plainly happened early in the proceedings at the inception of petitioner's post-adjudicatory improvement period. It scarcely requires explication that the purpose of an improvement period is, in fact, to improve. "The improvement period is granted to allow the parent an opportunity to remedy the existing problems." *W. Va. Dep't of Hum. Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990). Continuous recirculation of failures and shortcomings which occurred early in the improvement period process is of limited relevance to a determination as to whether a respondent parent has adequately addressed the conditions of abuse and/or neglect, particularly where no more current information is adduced.

is making strides towards reunification with the child." *In re C. M.*, 235 W. Va. 16, 25 n.20, 770 S.E.2d 516, 525 n.20 (2015). Drug testing was discontinued due to Covid-19 shortly after her March relapse and not reinitiated due to DHHR's altered position that petitioner's rights should be terminated.

Importantly, although DHHR suggests that services, testing, and visitation were not reinitiated due to her relapse and the fact the case had been "staffed for termination," petitioner remained under a court-ordered improvement period. At no time did DHHR seek termination of the dispositional improvement period, but rather allowed it to languish without activity or visitation with the children until such time as a final dispositional hearing could be conducted nearly seven months later. *See* W. Va. Code § 49-4-610(7) (2015) (allowing for termination of improvement period upon motion of any party and finding that parent "failed to fully participate in the terms" of improvement period). We have explained that an improvement period "is a period in which the [DHHR] and the court should attempt to facilitate the parent's success"—not abdicate responsibility for promoting and monitoring progress. *Carlita B.*, 185 W. Va. at 625, 408 S.E.2d at 377. As the *Carlita B.* Court further observed: "[A]n improvement period must be more than a mere passage of time." *Id.*

This Court has previously reversed the termination of parental rights where the evidence in support lacked a temporal relationship to the present circumstances of the respondent parent and children:

> In summary, the best evidence of the [DHHR] is remote and, unfortunately for the State, irrelevant to the conditions existing in the critical period just prior to . . . [the dispositional hearing], when the court was called upon to reassess in a valid and meaningful manner, relevant and pertinent evidence on the issues of neglect and unfitness of the parents. In point of time the evidence of the State, otherwise unrefuted, establishing the transgressions of apathetic parenthood, is certainly insufficient when assessed in light of the recent and favorable evidence showing the parents' efforts and successes toward improvement of the family environment and the physical living conditions in the home.

*Willis*, 157 W. Va. at 246, 207 S.E.2d at 141. The *Willis* Court properly characterized DHHR's evidence "not seasonable as remote in time and, therefore, [] not relevant and material." *Id*. at 247, 207 S.E.2d at 142. Despite having allowed petitioner's court-ordered improvement period to unceremoniously expire, DHHR then failed to support its recommended disposition with any seasonable, cogent evidence which would permit the circuit court to make an informed decision about whether, at the time of the dispositional hearing, there was a "reasonable likelihood the conditions of neglect or abuse can be substantially corrected in the near future[.]" W. Va. Code § 49-4-604(c)(6).

More importantly, DHHR's insistence that the circuit court's disposition properly rested solely on second-hand, anecdotal case "summaries" about petitioner's conduct ignores the most fundamental determination before the circuit court: the best interests of the children. The Court has explained that

> [i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to

16

be considered. The controlling standard that governs any dispositional decision remains the best interests of the child.

Syl. Pt. 4, *In re B. H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014); *see also In re Frances J.A.S.*, 213 W.Va. 636, 646, 584 S.E.2d 492, 502 (2003) ("The question at the dispositional phase of a child abuse and neglect proceeding is not simply whether the parent has successfully completed his or her assigned tasks during the improvement period. Rather, the pivotal question is what disposition is consistent with the best interests of the child.").

Aside from proffers from the fathers' respective attorneys requesting termination of all parental rights, DHHR failed to provide the circuit court with any information upon which to determine the children's best interests and, more specifically, whether termination was "necessary for the welfare" of the children. *See In re A. P.*, 245 W. Va. 248, ___, 858 S.E.2d 873, 880 (2021) (observing "distinct requirement[]" that termination be "necessary for the welfare of the child" in terms of the child's "physical and emotional well-being."). This absence of evidence is particularly striking where the guardian ad litem's recommendation was that the children were best served by a temporary removal of *custodial* rights only to allow petitioner to complete her recovery. Further, despite repeated reference to a letter written by K. S. bemoaning petitioner's inconsistency during the case, that letter was apparently neither formally made a part of the record below, nor the appendix record herein. However, even if it were, a letter written by one child does not necessarily provide useful information about the best interests of the other two children, both of whom were still quite young.

17

The dearth of evidence at disposition plainly deprived the circuit court of the opportunity to hear and observe first-hand information vital to determining whether petitioner was capable of correcting the conditions of abuse and neglect and what manner of disposition was in the children's best interests. Further, the absence of evidence on behalf of DHHR unquestionably shifted the burden of proof onto petitioner to attempt to prove that termination was not necessary. DHHR now attempts to leverage the evidence presented *by petitioner* to fill an otherwise vacant record and create the illusion that it fulfilled its burden of proof. However, "the Rules of Procedure for Child Abuse and Neglect Proceedings as well as our extensive body of caselaw do not exist merely as a vehicle to reach a predetermined outcome. Rather, they serve an important due process function for parents whose fundamental rights are at stake[.]" *In re A. F.*, ___ W. Va. ___, ___, 866 S.E.2d 114, 123 (W. Va. 2021) (Wooton, J., concurring in part and dissenting in part).

The dispositional order not surprisingly mimics this paucity of evidence and—aside from referencing the duration of the case and petitioner's generic "inconsistency"—fails to support its required statutory determinations in any meaningful way. This Court has admonished against such sparse and conclusory orders in abuse and neglect proceedings:

> Where a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings

18

required by West Virginia Code § 49-6-5(a)(6) (1998) (Repl.Vol.2001) on the record or in the order, the order is inadequate.

Syl. Pt. 4, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001). Where DHHR's evidence at disposition fundamentally fails to inform the critical issues required by statute, mere talismanic reiteration of statutory "buzzwords" in a dispositional order cannot salvage it. In a case containing similar deficiencies, we noted:

> [T]he circuit court's order, as well as the appendix record, show that the circuit court was lacking important evidence necessary for determining the petitioner's parental fitness to parent C. N. Similar to our decision to reverse and remand in *In re Timber M.*, we are left "with the firm conviction" that no one adequately considered the petitioner's parental fitness to have custody of C. N.

*In re A. N.*, 241 W. Va. 275, 289, 823 S.E.2d 713, 727 (2019) (citations omitted); *see also In re Jessica M.*, 231 W. Va. 254, 263, 744 S.E.2d 652, 661 (2013) (reversing termination where DHHR failed to "introduce supporting evidence" warranting termination and respondent parent's evidence "refuted the CPS worker's unsubstantiated concern[s]"); *compare S. C.*, 168 W. Va. at 369, 284 S.E.2d at 870 (rejecting claim that failure to introduce CPS reports and call certain witnesses improperly shifted burden of proof where DHHR called children and different caseworker as live witnesses).

Accordingly, the Court invokes its inherent authority and obligation to vacate a disposition which fails to comport with procedural and substantive requirements under our statutes and caselaw:

Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

*Edward B.*, 210 W. Va. 621, 558 S.E.2d 620, syl. pt. 5; *see also In re Emily G.*, 224 W. Va. 390, 396, 686 S.E.2d 41, 47 (2009) ("When the requisite procedure is not followed in an abuse and neglect case[] . . . the order resulting from such deviation will be vacated and the case will be remanded for entry of an order that satisfies the procedural requirements[.]"). We therefore vacate the circuit court's final dispositional order and remand for a proper dispositional hearing which fully and adequately permits the circuit court to undertake the required inquiries and analysis necessary for disposition, properly accounting for the current circumstances relative to petitioner's parental fitness and the children's best interests.

B.    PROSECUTING ATTORNEY'S DUTY TO ADVOCATE FOR DHHR'S POSITION

Having determined that the circuit court's dispositional order must be vacated due to DHHR's failure to introduce evidence in support of termination, we find that petitioner's second assignment of error regarding the proper disposition is rendered moot. However, we find it necessary to address an additional, fundamental procedural flaw in the proceedings below—one which implicates the prosecutor's advocacy on behalf of

DHHR.  As set forth more fully above, based upon the transcript of the dispositional hearing, it appears the prosecutor believed she was entitled to take a position as to the appropriate disposition to be afforded petitioner which was inconsistent with the position of her client, DHHR.  While we draw no conclusions about whether this disagreement precipitated the failure of the prosecutor to put on evidence in support of termination, we take this opportunity to underscore our prior holdings in this regard such as to avoid repetition on remand and in other proceedings.

West Virginia Code § 49-4-501(a) (2015) provides that "[t]he prosecuting attorney shall render to the Department of Health and Human Resources, without additional compensation, the legal services as the department may require."  Accordingly, this Court has clarified that in abuse and neglect proceedings the prosecutor acts strictly as an advocate of its client, DHHR.  In *In re Jonathan G.*, the Court first confronted this anomaly, plainly stating that "a prosecuting attorney has no independent right to formulate and advocate positions separate from its client in these cases."  198 W. Va. 716, 732, 482 S.E.2d 893, 909 (1996) (footnote omitted), *holding modified on other grounds by State ex rel. C. H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).  The following year, in *State ex rel. Diva P. v. Kaufman,* 200 W. Va. 555, 490 S.E.2d 642 (1997), *superceded by statute on other grounds*, W. Va. Code § 49-4-610(9), the Court once again addressed this breakdown in the attorney-client paradigm where "DHHR recommended a disposition of this case

21

which the prosecutor opposed." *Id*. at 564, 490 S.E.2d at 651. The Court again firmly renounced this practice, explaining:

> The relationship between DHHR and county prosecutors under the statute is a pure attorney-client relationship. The legislature has not given authority to county prosecutors to litigate civil abuse and neglect actions independent of DHHR. Such authority is granted to prosecutors only under State criminal abuse and neglect statutes. Therefore, all of the legal and ethical principles that govern the attorney-client relationship in general, are applicable to the relationship that exists between DHHR and county prosecutors in civil abuse and neglect proceedings.

*Id.* at 564, 490 S.E.2d at 651; *see also In re Ashton M*., 228 W. Va. 584, 589, 723 S.E.2d 409, 414 (2012) ("We agree with Michelle M. that an attorney-client relationship existed between the prosecuting attorney and DHHR, and as such, the prosecuting attorney had a duty to represent DHHR's recommendation of termination of custodial rights only, not termination of parental rights, to the circuit court.").

Again, whether this disagreement about the requested disposition caused the prosecutor to decline to present evidence is not apparent from the record. And while the circuit court acceded to DHHR's, rather than the prosecutor's, requested disposition, we cannot say that the prosecutor's failure to advocate for DHHR's position did not exact a confounding influence on the dispositional hearing. We therefore reiterate our caution that prosecutors serve as counsel for DHHR in a traditional attorney-client construct for purposes of abuse and neglect proceedings and must conform their advocacy accordingly.

22

## C.   RIGHTS OF CONTINUED ASSOCIATION

Finally, although no party assigned this aspect of the dispositional order as error, we find it necessary to address the children's rights of continued association for purposes of remand. Without assumption as to how the circuit court may rule upon a properly developed evidentiary record on remand, we note that the order on appeal inadequately managed the post-termination visitation awarded to petitioner and failed to properly consider sibling visitation.

Under our caselaw,

> When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995). Although the dispositional order made an allowance for post-termination visitation with petitioner and the circuit court appeared to encourage it, the order left such visitation at the fathers' discretion. This is not a proper order of post-termination visitation.

The Court has made clear that such visitation is the right of the child; as such, this right cannot be held hostage by the biological fathers. *See Christina L.,* 194 W. Va. at

23

455 n.9, 460 S.E.2d at 701 n.9 ("Such post-termination visitation or other continued contact where determined to be in the best interest of the child could be ordered not as a right of the parent, but rather as a right of the child."). On remand, should the circuit court ultimately terminate petitioner's parental rights, any such post-termination visitation should be properly delineated in the dispositional order.

Similarly, the circuit court's order made no provision for sibling visitation. Although each child was placed with a different biological father, the children had lived together their entire lives. We have held that

> [i]n cases where there is a termination of parental rights, the circuit court should consider whether continued association with siblings in other placements is in the child's best interests, and if such continued association is in such child's best interests, the court should enter an appropriate order to preserve the rights of siblings to continued contact.

Syl. Pt. 4, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991). Further, "where siblings have been together their entire lives, there is a strong presumption that it is in the best interests of the children that they maintain their sibling relationship through continued visitation if possible." *In re N. A.*, 227 W. Va. 458, 468, 711 S.E.2d 280, 290 (2011).

The circuit court below appeared satisfied with anecdotal accounts of the fathers getting the siblings together. However, like post-termination visitation, this right of continued association belongs to the children and must not be left to the whims of the biological fathers; a proper visitation plan must be formulated where visitation is found

24

appropriate. *See Edward B.*, 210 W. Va. at 635, 558 S.E.2d at 634 (finding that circuit court's order terminating parental rights failed to adequately address "rights to continued association" including sibling visitation and post-termination visitation by stating only that "liberal visitation" would be permissible); *N. A.*, 227 W. Va. at 468, 711 S.E.2d at 290 ("[T]he Court should develop an appropriate sibling visitation plan that will provide for meaningful continued contact between M. P. and his siblings so the siblings are not denied a continued relationship.").

## IV.  CONCLUSION

Therefore, for the reasons set forth herein, we vacate the December 3, 2020, order of the Circuit Court of Monongalia County and remand for further proceedings consistent with this opinion.

Vacated and remanded with directions.