532 S.E.2d 358

STATE of West Virginia ex rel. the WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, and on behalf of CHASTITY D., James D., Leslie C., Rosemarie C., Jeffrey I., Priscilla I., Chrystal M., Shane M., Cynthia M., Brandy W., and Ciera S., Petitioner,

v.

Honorable George W. HILL, Jr., Judge of the Circuit Court of Wood County, Respondent.

No. 26844.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 2000.

Decided Feb. 24, 2000.

Darrell V. McGraw, Jr., Esq., Attorney General, Rocco S. Fucillo, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for Petitioner, West Virginia Department of Health and Human Resources.

Honorable George W. Hill, Jr.

SCOTT, Justice:

In this original-jurisdiction proceeding, the petitioner, the West Virginia Department of Health and Human Resources (hereinafter "DHHR"), seeks a writ of mandamus compelling the respondent, the Honorable George W. Hill, Jr., Judge of the Circuit Court of Wood County, to conduct disposition hearings pursuant to West Virginia Code § 49–6–5 (1999) in six child abuse and neglect cases in order to resolve the status of the parental rights of the biological fathers, who allegedly abandoned their children. In each case, the mother's parental rights have been terminat-

ed, but the respondent judge has left unresolved the issue of whether the father's parental rights should be terminated. Under the circumstances of the cases before us, we conclude that disposition hearings regarding termination of the fathers' parental rights are required as part of the abuse and neglect proceedings. Accordingly, the writ of mandamus is granted.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

■ The six abuse and neglect cases giving rise to this mandamus action involve a combined total of eleven children, who have been adjudged abused and neglected, and seven biological fathers,[1] who have allegedly abandoned their children.[2] While the cases differ somewhat factually, they share two important commonalities—(1) DHHR filed a child abuse and neglect petition in the Circuit Court of Wood County seeking, *inter alia*, termination of the father's parental rights, and (2) the respondent judge refused and/or failed to conduct a disposition hearing on the issue of whether the father's parental rights should be terminated. The salient facts in each case are outlined below.

### A. *Chastity D.*,[3] *James D., Leslie C., Rosemarie C., Jeffrey I., Jr., Priscilla I., and Brandy W.*

In four of the abuse and neglect cases, Judge Hill entered an "agreed" order terminating the parental rights of the "unknown" father without a disposition hearing. Each "agreed" order was signed by counsel for the father, the assistant prosecuting attorney, and the children's guardian ad litem.[4] The

---

1. Hereinafter, we use the word "father" to refer to a biological father.

2. DHHR indicates in its petition for writ of mandamus that the fathers in these cases are either "unknown" or have "otherwise abandoned" their children. In *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995), this Court recognized that abandonment of a child by a parent "constitutes grounds for termination of parental rights." *Id.* at 456, 460 S.E.2d at 702.

3. We adhere to our usual practice in family law cases involving sensitive facts and use initials to

identify the parties rather than their full names. *See In re Beth Ann B.*, 204 W.Va. 424, 425 n. 1, 513 S.E.2d 472, 473 n. 1 (1998); *State ex rel. Paul B. v. Hill*, 201 W.Va. 248, 250 n. 1, 496 S.E.2d 198, 200 n. 1 (1997); *In re Katie S.*, 198 W.Va. 79, 83 n. 2, 479 S.E.2d 589, 593 n. 2 (1996).

4. The validity of the consent given by the attorneys for the fathers is not at issue. But we are mystified by the practice illustrated upon the record of these cases whereby an agreed order is signed by the attorney for an "unknown" father,

children involved in these cases are Chastity D., James D., Leslie C., Rosemarie C., Jeffrey I., Jr., Priscilla I., and Brandy W.[5]

The four agreed orders were substantially the same, each stating that "the parties advised the Court that the respondent-unknown father waived the adjudicatory and dispositional hearings and it being in the best interests of the child the parties agree that the unknown father's parental rights should be **TERMINATED** to the above-named children." The orders contained specific findings, including "that the respondent-father neglected the above-named children in that he has abandoned the said child [sic]; that there is no reasonable likelihood that the conditions of neglect . . . can be substantially corrected in the near future; . . . and that the Court has no other recourse than to terminate the parental rights of the respondent-father. . . ." In addition, Judge Hill awarded DHHR legal and physical custody of the children and authorized DHHR to consent to their adoption.[6]

### B. Chrystal M., Shane M., and Cynthia M.

The fifth abuse and neglect case concerned several children, but the instant mandamus petition relates to only three of those children: Chrystal M., born March 7, 1979; Shane M., born July 10, 1986; and Cynthia

M., born November 27, 1987. Because Chrystal M. is now twenty years old and no longer subject to the circuit court's jurisdiction for purposes of abuse and neglect proceedings,[7] our decision herein does not pertain to her.

On March 14, 1996, DHHR filed a petition alleging, *inter alia*, that Shane M. and Cynthia M. were abused or neglected children. In the petition, the children's mother was identified as Donna M., and their father was identified as Steve A., address unknown. DHHR alleged that the children were residing with their mother and Phillip B.[8] at a certain Parkersburg address. The petition contained specific allegations of physical abuse by Donna M. and implicated both Donna M. and Phillip B. as being guilty of neglect. At the close of the petition, DHHR requested that the "parental rights of the aforementioned parents . . . be permanently terminated. . . ." [9]

On March 14, 1996, Judge Hill entered an order which found imminent danger to the physical well being of the children and directed that they be delivered into the custody of DHHR, pending a preliminary hearing. In the order, notice was given of a preliminary hearing and a "final hearing" on March 21, 1996, at 3 p.m. and April 26, 1996, at 1:15 p.m., respectively. At the conclusion of the order, the clerk of the court was directed to

ostensibly signifying the father's consent to termination of his parental rights, when the attorney has never met nor spoken with his or her client. Obviously, an attorney cannot consent to, waive, or surrender any rights of a client who is unknown or cannot be located. Under such circumstances, the only way in which an "unknown" father's parental rights can be terminated is upon a proper hearing pursuant to West Virginia Code § 49–6–5.

**5.** There is no indication of the children's ages on the limited record before us.

**6.** The agreed order in the Chastity D. and James D. matter was entered on July 22, 1999. The agreed order in the case involving Rosemarie C., Jeffrey I., Jr., and Priscilla I. was entered on July 23, 1999. The agreed order in the Leslie C. matter was entered on July 27, 1999, and the agreed order in the Brandy W. matter was entered on August 4, 1999.

**7.** West Virginia Code § 49–1–2 (1999) defines a "child" as used in chapter 49 to mean "any

person under eighteen years of age." Thus, a circuit court's jurisdiction over a child abuse and neglect proceeding, governed by article 6 of chapter 49, terminates when the child turns eighteen. In this particular case, the abuse and neglect proceeding should have been dismissed as to Chrystal M. when she attained the age of eighteen.

**8.** Phillip B. is the father of two children who were named in the abuse and neglect petition but are not involved in this mandamus action.

**9.** The sufficiency of the abuse and neglect petition is not at issue here. We observe, however, that given DHHR's apparent belief that the father of Shane M. and Cynthia M. had abandoned them, the facts relating thereto should have been alleged in the petition. In syllabus point one of *Katie S.*, this Court held that a non-custodial parent can be found to have abused and neglected his or her child, expressly overruling *State ex rel. McCartney v. Nuzum*, 161 W.Va. 740, 248 S.E.2d 318 (1978). 198 W.Va. at 86, 479 S.E.2d at 596.

deliver copies of the petition, order, and notice to the county sheriff to be served upon the children's mother and Phillip B., who were "made the Respondents to this cause." In addition, attorneys were appointed to represent the designated respondents and the children. This order made no mention of Steve A., the children's father.

Following the preliminary hearing on March 21, 1996, the respondent judge entered an order on March 22, 1996, awarding DHHR temporary custody of the children and granting the "respondent-parents" a six-month improvement period.

On January 16, 1997, DHHR filed a supplemental abuse and neglect petition alleging sexual abuse of the children by their mother and Phillip B. On April 4, 1997, May 21, 1997, and June 13, 1997, an adjudicatory hearing took place, and on July 9, 1997, an adjudicatory order was entered, finding the children were abused and neglected and the abuse and neglect was inflicted by Donna M. and Phillip B. Upon these findings, it was ordered that temporary legal and physical custody of the children remain with DHHR. Also, in the adjudicatory order, Judge Hill set a date and time for the disposition hearing and directed the court clerk to provide a certified copy of the order to the "parties."

On August 4, 1997, Judge Hill held a disposition hearing, and on August 20, 1997, a disposition order was entered which terminated the parental rights of Donna M. and Phillip B. The order was silent regarding the parental rights of Steve A. As indicated earlier, previous orders did not recognize Steve A. as a party to the proceeding, even though he was named in the abuse and neglect petition and DHHR requested termination of his parental rights.

On September 23, 1999, Judge Hill entered an agreed order, signed by the assistant prosecuting attorney and guardian ad litem, continuing DHHR's custody of the children.[10]

### C. *Ciera Faith S.*

The sixth abuse and neglect case now in question involves Ciera Faith S. and her putative father, with regard to whom no disposition hearing has been held. On September 23, 1999, Judge Hill conducted a hearing on an amended abuse and neglect petition, filed by DHHR, pertaining to the "unknown" father of Ciera Faith S.[11] At the hearing, the assistant prosecuting attorney, who was serving as counsel for DHHR, stated that DHHR sought to have the "unknown" father "adjudicated of neglect by virtue of abandonment." The prosecuting attorney acknowledged that the child's mother alleged a man named James S. was the father and that "[h]e was to come in for a [paternity] test and never did."[12] In addition, the prosecuting attorney stated that Ciera Faith S. was going through an adoption. Thereafter, the following exchange ensued between Judge Hill and the prosecuting attorney:

> THE COURT: That is fine. Go through with the adoption.
>
> MS. LITTLE: That is where we run into problems. The department has a policy—
>
> THE COURT: The hell with their policy. I don't approve of their policy. That is an order of the Court. I see nothing to do but to proceed with the adoption. I am going to overrule the objection of the department when it comes to that. Their policies are not set by statute.

Later during the September 23, 1999, hearing, the child's guardian ad litem expressed her concern about going through with the adoption given the unaddressed allegation that James S. was Ciera Faith S.'s father. Judge Hill abruptly dismissed this concern, stating: "The adoption statute provides if there is no father. Okay. This is a waste of time and money, and a waste of the lawyer's time and the taxpayer's money, and abuse and neglect proceedings. The policy of the department is just wasteful of everybody's time, including theirs."

---

**10.** Previously, on August 27, 1999, the respondent judge had entered an order granting DHHR permission to authorize separate placement and adoption of the children.

**11.** Ciera Faith S. was two years old at the time of the hearing.

**12.** James S. did not appear in person at the hearing, but he was represented there by counsel.

On October 1, 1999, Judge Hill entered an order which declared: "this proceeding with regard to the respondent-father's parental rights is moot and shall be considered at the adoption hearing." By the same order, Judge Hill dismissed the case from the circuit court's docket.

## II.

## STANDARD FOR WRIT OF MANDAMUS

■ This case is before this Court on the petition of DHHR seeking the extraordinary remedy of mandamus. The standard for determining whether issuance of a writ of mandamus is proper in a particular case entails a three-prong inquiry:

> " ' "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syllabus Point 1, *State ex rel. Billy Ray C. v. Skaff,* 190 W.Va. 504, 438 S.E.2d 847 (1993); Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969).' Syllabus point 2, *Staten v. Dean,* 195 W.Va. 57, 464 S.E.2d 576 (1995)." Syllabus point 2, *Ewing v. Board of Education of Summers County,* 202 W.Va. 228, 503 S.E.2d 541 (1998).

Syl. Pt. 1, *State ex rel. ACF Indus., Inc. v. Vieweg,* 204 W.Va. 525, 533–34, 514 S.E.2d 176, 184–85 (1999). Thus, our task is to ascertain whether DHHR has satisfied these criteria and thereby demonstrated its entitlement to mandamus relief. *See id.* at 534, 514 S.E.2d at 185.

## III.

## DISCUSSION

Following this standard, we consider (1) whether DHHR has a "clear legal right" to the writ of mandamus compelling Judge Hill to conduct disposition hearings in the abuse and neglect cases now before us; (2) whether Judge Hill has a "legal duty" to do that which DHHR seeks to compel; and (3) whether mandamus relief is the only "adequate remedy" available to DHHR.

■ In our analysis, we explore one determinative question: In each of the six abuse and neglect cases, was Judge Hill required to hold a disposition hearing and decide whether the father's parental rights should be terminated during the abuse and neglect proceeding? For the reasons outlined below, we answer it affirmatively.

This Court has repeatedly condemned the practice of failing to determine the status of the father's parental rights during an abuse and neglect proceeding. In *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995), an abuse and neglect case in which the natural mother's parental rights to two children were terminated, this Court found it was reversible error for the Circuit Court of Wood County to authorize DHHR to consent to the children's adoption without addressing the father's parental rights. Even though the father was named in the abuse and neglect petition filed by DHHR, and it was alleged in the petition that he resided "somewhere in Parkersburg" and had not been in contact with the children for a number of years, the circuit court failed to include him in the proceeding. We identified two serious problems with the circuit court's approach in that case. First, it "strips [the father] . . . of any parental rights without affording him due process." *Id.* at 455, 460 S.E.2d at 701. Second, and "[p]erhaps even more importantly, it leaves the status of the children dangling, and the validity of a future adoption subject to challenge." *Id.* Based on this rationale, we forcefully rejected DHHR's argument that the father could move to protect his rights if and when persons to adopt the children were found:

> It would be ludicrous for this Court to allow this matter to linger while Christina and Kenneth are in foster care. Should they be fortunate enough to form a bond with their foster parents and the foster parents move for adoption, it would be all the more devastating to the children to have to go back into court to litigate whatever rights the natural father may possess. Dangling, unresolved parental rights also have a chilling effect on potential adoptive

parents. We choose to resolve this issue in a timely manner rather than to leave this potential timebomb unresolved.

194 W.Va. at 456, 460 S.E.2d at 702.

In *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996), this Court reiterated its concern for resolution of the status of the father's parental rights as part of the abuse and neglect proceeding. The abuse and neglect petition filed by DHHR in *Katie S.* sought termination of the parental rights of both parents of two children. The father was named in the petition; his address was listed as "unknown;" and the evidence strongly suggested that he had abandoned his children. At the end of the disposition hearing, the circuit court terminated the mother's parental rights, but found that the father was not a proper party and dismissed him. On review, this Court was critical of the fact that "no action was taken [by the circuit court] concerning the parental rights of the children's father":

> We again emphasize that the practice of waiting until adoption proceedings to determine the status of such a parent's parental rights, leaves "the children in 'No Man's Land' with regard to any resolution in their lives," may discourage persons who want to adopt the children, and leaves "the validity of a future adoption subject to challenge" (when due process has not been afforded to a natural parent). *In re Christina L.*, 194 W.Va. at 455–56, 460 S.E.2d at 701–2.

198 W.Va. at 85–86, 479 S.E.2d at 595–96. We concluded in *Katie S.* that "the circuit court should have considered the allegation that the father had abandoned his children when the abuse and neglect petition was presented." *Id.* at 87, 479 S.E.2d at 597. Therefore, we directed the circuit court to consider upon remand the issue of the father's parental rights. *Id.*

In two of the cases *sub judice*, the respondent judge did not decide whether the father's parental rights should be terminated.[13] Judge Hill's failure to resolve the status of the father's parental rights was clearly contrary to both *Christina L.* and *Katie S.* By leaving "[d]angling, unresolved parental rights" in these cases, Judge Hill created a "potential timebomb" which, if left unattended, could obliterate the children's chances of being placed into adoptive homes.[14] *Christina L.*, 194 W.Va. at 456, 460 S.E.2d at 702. For these reasons, we conclude that the respondent judge should have resolved the status of the father's parental rights in all six abuse and neglect cases here presented. We further conclude, under well-settled law, that a disposition hearing was necessary to make such a determination.

West Virginia Code § 49–6–5, the statute governing the dispositional phase of abuse and neglect proceedings, provides in relevant part: "The court shall forthwith proceed to disposition giving both the petitioner [normally DHHR] and respondents [normally the child's parents] an opportunity to be heard." W. Va.Code § 49–6–5(a). Recently, in *In re Beth Ann B.*, 204 W.Va. 424, 513 S.E.2d 472 (1998), this Court spoke succinctly on the requirement of a disposition hearing. The sole issue in *Beth Ann B.* was whether a circuit court may terminate parental rights in a child abuse and neglect proceeding without first conducting a disposition hearing, when the parent has signed an agreed order containing stipulations of facts which, if proven, would support a termination of parental rights under West Virginia Code § 49–6–5. Despite the existence of such an agreed order, signed by the children's natural mother and her counsel, we decided that a disposition hearing was required and reversed the decision of the circuit court. In syllabus point two of *Beth Ann B.*, we held:

---

**13.** As discussed in Part I, *supra,* in the other four cases, Judge Hill terminated the father's parental rights by entry of an agreed order and without a disposition hearing, an approach which violates Rules 33 and 35 of the Rules of Procedure for Child Abuse and Neglect Proceedings. *See supra* note 4 and *infra* note 15.

**14.** Pursuant to West Virginia Code § 49–6–5(a)(6), "[n]o adoption of a child shall take place until all proceedings for termination of parental rights under this article and appeals thereof are final." Thus, where an abuse and neglect proceeding has been instituted seeking termination of the father's parental rights, timely resolution of the status of the father's rights is crucial.

In a child abuse and/or neglect proceeding, even where the parties have stipulated to the predicate facts necessary for a termination of parental rights, a circuit court must hold a disposition hearing, in which the specific inquiries enumerated in Rules 33 and 35 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* are made, prior to terminating an individual's parental rights.

*Id.* at 425, 513 S.E.2d at 473. Our holding was based upon the statutory scheme applicable in child abuse and neglect proceedings and the Rules of Procedure for Child Abuse and Neglect Proceedings.[15] In reaching our holding, we stated:

Clearly, the statutory scheme contemplates a disposition hearing prior to termination of an individual's parental rights. This Court recognized as much in syllabus point one of *West Virginia Department of Welfare ex rel. Eyster v. Keesee,* 171 W.Va. 1, 297 S.E.2d 200 (1982), where we held:

"West Virginia Code, Chapter 49, Article 6, Section 2, as amended, and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing." Syl. pt. 2, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973).

Our decision in *Keesee* preceded the advent of the *Rules of Procedure for Child Abuse and Neglect Proceedings,* adopted by order of this Court on December 5, 1996, and effective on January 1, 1997. But the mandatory prerequisite of a disposition hearing where parental rights are being terminated is plainly incorporated in the *Rules.*

204 W.Va. at 428, 513 S.E.2d at 476; *see also* Syl. Pt. 2, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973) ("West Virginia Code, Chapter 49, Article 6, Section 2, as amended, and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing."); *In re Sutton,* 132 W.Va. 875, 880, 53 S.E.2d 839, 842 (1949) ("A parent, in our opinion, cannot be divested of parental rights without notice and opportunity for hearing.").

In every case now before this Court, Judge Hill failed to hold a disposition hearing, which we have previously found to be a "mandatory prerequisite" to the termination of parental rights. *Beth Ann B.,* 204 W.Va. at 428, 513 S.E.2d at 476. Because we have determined that Judge Hill should have decided whether to terminate each father's parental rights during the abuse and neglect proceeding, as discussed above, we must also conclude that he should have conducted a disposition hearing prior to rendering that decision.

Accordingly, under the facts of the cases before us, we hold that in a child abuse and neglect proceeding where abandonment of the child by either or both biological parents is alleged and proven, the circuit court should decide in the dispositional phase of the proceeding whether to terminate any or all parental rights to the child. Before making that decision, even where there are written relinquishments of parental rights, the circuit court is required to conduct a disposition hearing, pursuant to West Virginia Code § 49–6–5 (1999) and Rules 33 and 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, at which the issue of such termination is specifically and thoroughly addressed. Adoption proceedings should not be burdened unnecessarily with this issue.

## IV.

## CONCLUSION

Based upon the foregoing, we conclude that the three criteria for mandamus relief, discussed in Part II, are fully satisfied. Therefore, we grant the writ of mandamus requested by DHHR and order Judge Hill to

---

**15.** The Rules of Procedure for Child Abuse and Neglect Proceedings were adopted by order of this Court on December 5, 1996, and became effective on January 1, 1997.

hold a proper disposition hearing in each case in order to address and resolve the issue of whether the father's parental rights should be terminated.

Writ granted as moulded.