IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 24-746 and No. 24-766
_____

*In Re* P.F. and M.F.-1

Appeal from the Circuit Court of Mason County
The Honorable R. Craig Tatterson, Judge
Civil Action Nos. 24-JA-16 and 24-JA-17

VACATED AND REMANDED WITH DIRECTIONS
_____

Submitted: March 25, 2026
Filed: May 22, 2026

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**FILED**

**May 22, 2026**

Robert W. Bright, Esq.
Middleport, Ohio
Counsel for the Petitioner, S.F.

Nic Dalton, Esq.
Point Pleasant, West Virginia
Counsel for the Petitioner, M.F.-2

Tanya Hunt Handley, Esq.
Point Pleasant, West Virginia
Guardian Ad Litem

John B. McCuskey, Esq.
Attorney General
James Wegman, Esq.
Assistant Attorney General
Office of the Attorney General
Charleston, West Virginia
Counsel for Respondent,
Department of Human Services

JUSTICE TRUMP delivered the Opinion of the Court.

**SYLLABUS OF THE COURT**

1.      "This Court reviews the circuit court's orders in abuse and neglect proceedings using the three following standards: (1) substantive rulings, such as whether the evidence supports a conclusion that a child has been abused or neglected or whether termination of parental rights is appropriate, are reviewed for abuse of discretion; (2) factual findings supporting substantive rulings are reviewed for clear error; and (3) to the extent review of the order implicates an issue of law or requires statutory interpretation, our review is de novo." Syllabus Point 1, *In re K.S.*, No. 24-740, __ W. Va. __, __ S.E.2d __ (2026).

2.      "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syllabus Point 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

3.      "In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected

i

and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions." Syllabus Point 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

4.  Consistent with West Virginia Code § 49-4-601(h), a circuit court may not dismiss a parent as a party to an abuse and neglect case if he or she retains any parental rights to a subject child.

5.  "'[T]he circuit court is required to conduct a disposition hearing, pursuant to [West Virginia Code § 49-4-604] and Rules 33 and 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, at which the issue of [] termination is specifically and thoroughly addressed.' Syl. Pt. 3, in part, *State ex rel. W. Va. Dep't of Health & Hum. Res. ex rel. Chastity D. v. Hill*, 207 W. Va. 358, 532 S.E.2d 358 (2000)." Syllabus Point 2, *In re K.S.*, 246 W. Va. 517, 874 S.E.2d 319 (2022).

6.  Whenever a circuit court modifies the initial disposition of an abuse and neglect case pursuant to West Virginia Code § 49-4-606, the court must satisfy the procedural requirements that apply to the new manner of disposition according to West Virginia Code § 49-4-604 and this Court's rules.

**TRUMP, Justice:**

The petitioners, S.F. ("the mother") and M.F.-2 ("the father"), both filed appeals challenging the Circuit Court of Mason County's November 20, 2024, order terminating their parental rights to their two children.[1] This Court has consolidated the petitioners' appeals for the purposes of our consideration and opinion.[2] On appeal, the petitioners assert that the circuit court erred when it modified the "initial disposition" of the case that the circuit court had previously ordered and, instead, terminated their parental rights to the children. The initial disposition of the case involved the petitioners' voluntary relinquishment of their custodial rights (but not their parental rights) to the children and the children's placement in a subsidized legal guardianship. Thereafter, the circuit court granted a Department of Human Services ("DHS")[3] motion to modify the initial disposition and terminate the petitioners' parental rights, giving rise to this appeal.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the circuit court substantially disregarded and frustrated the abuse and neglect processes established by the West Virginia

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Further, because one of the children and the petitioner-father share the same initials, we refer to them as M.F.-1 and M.F.-2, respectively.

[2] The mother, S.F., is the petitioner in docket number 24-746, and the father, M.F.-2, is the petitioner in docket number 24-766.

[3] Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel for DHS.

1

Code and this Court's rules at two stages of the proceedings below. First, the circuit court erred when it improperly dismissed the petitioners as parties to the case after they had voluntarily relinquished their custodial rights to the children but while they still retained their parental rights. Subsequently, the circuit court erred when it modified the initial disposition of the case and terminated the petitioners' parental rights without following the necessary dispositional procedures. Accordingly, we vacate the circuit court's November 20, 2024, dispositional order and remand these cases for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL BACKGROUND

The DHS initiated abuse and neglect proceedings against the petitioners in the Circuit Court of Mason County in February 2024, alleging that they had abused and neglected their children, a then-fourteen-year-old son, P.F., and a then-fifteen-year-old daughter, M.F.-1. Specifically, the petition alleged that the petitioners had subjected the children to domestic violence and the effects thereof and had failed to maintain appropriate housing. At the April 2024 adjudicatory hearing, both petitioners stipulated to allegations in the petition that they had "failed to protect their infant children and provide the care necessary to ensure the health, safety, and welfare of [the children] inasmuch as they subjected them to domestic violence, the effects of domestic violence, and failed to provide the children with a safe, secure living environment[.]" Accordingly, the court adjudicated the parents as abusive and neglectful parents, adjudicated the children as abused and neglected children, and set the matter for disposition. Ahead of the dispositional hearing,

2

the DHS filed a motion to terminate the petitioners' parental rights to the children, and the petitioners filed motions for post-adjudicatory improvement periods.

When the circuit court convened the first dispositional hearing in May 2024, the court heard testimony and took evidence concerning the petitioners' motions for improvement periods but did not reach the matter of disposition. After denying the petitioners' motions for improvement periods, the court scheduled a second dispositional hearing to consider the DHS's motion to terminate the petitioners' parental rights. When the court convened the second dispositional hearing later that month, the petitioners immediately expressed their intention to relinquish their custodial rights to the children. The court then questioned each parent, individually, to confirm that their relinquishments were being offered knowingly and voluntarily; accepted their relinquishments; and approved a subsidized legal guardianship as the permanency plan for the children. The court also granted the petitioners' motions for supervised post-termination visitation with the children, to be scheduled at the sole discretion of the children. When the court inquired with the DHS and the guardian ad litem as to whether the disposition was "sufficient and in the best interests of the children," both answered in the affirmative. At the end of the dispositional hearing, the court dismissed the petitioners as parties to the case and informed the petitioners' respective appointed attorneys that they were "relieved of any further responsibility." The court entered a dispositional order in June 2024, reflecting its rulings during the hearing and noting that the respondent parents and their appointed attorneys were "dismissed and excused from this case upon the end of this hearing and further[.]"

A few months after the initial disposition, the children's intended guardian experienced a change of circumstances and was no longer willing to provide the subsidized guardianship that the circuit court had approved as the children's permanency plan. According to the mother, when she learned that the children were being moved from the placement in August 2024, she immediately contacted her attorney to seek legal assistance in regaining her custodial rights to the children. However, her attorney responded that he was unable to assist her, because the court had explicitly terminated his appointment to represent her at the conclusion of the May 2024 dispositional hearing. The petitioners then filed a joint pro se motion seeking to restore their custodial rights to the children. Shortly thereafter, the DHS filed a motion to modify the initial disposition of the case and terminate the petitioners' parental rights. In September 2024, the court held a permanency hearing for which neither petitioner was present, having been previously dismissed from the case and not served with notice of the hearing.[4] During the hearing, the court acknowledged the petitioners' and the DHS's pending motions, reinstated the petitioners as parties to the case, and reappointed their attorneys to represent them. The court also scheduled a hearing to consider the parties' pending motions.

---

[4] The docket sheet does not reflect proof of personal service on the petitioners with respect to any event following the initial abuse and neglect petition in February 2024, and the petitioners were unrepresented during the period of time between the initial disposition and the September 2024 hearing.

On November 13, 2024, the circuit court convened its hearing on the petitioners' joint motion to restore their custodial rights to the children and the DHS's motion to modify disposition and terminate the petitioners' parental rights.[5] Neither petitioner was present for the hearing, but both petitioners' appointed attorneys appeared on their behalf. The mother's attorney informed the court that he had not been able to reach the mother after he was reappointed to represent her, and that he did not "have anything to present" based on his lack of communication with his client. The father's attorney similarly informed the court that he had no knowledge of his client's whereabouts but proffered that M.F.-1 "wanted to see [her father] and was in support of the [petitioners' joint] motion" to restore their custodial rights. The DHS and guardian ad litem objected to the petitioners' motion. The court, explaining that it had "no evidence before it that there [had] been a change in circumstance and . . . no evidence that [the] modification [sought by the petitioners was] in the [children's] best interests," denied the petitioners' joint motion to restore their custodial rights.

The circuit court then considered the DHS's motion to modify the initial disposition of the case and terminate the petitioners' parental rights to the children. A Child Protective Services worker testified that the children's intended guardian was no longer

---

[5] The circuit court initially convened a hearing to consider the parties' pending motions on October 21, 2024, but realized during the hearing that the mother's attorney had not received notice of the hearing. The mother's attorney missed the majority of the hearing as a result, discovering it to be underway when he arrived at the courthouse for a hearing in an unrelated matter. Therefore, the court deferred consideration of the pending motions and scheduled a second hearing to convene on November 13, 2024.

willing to care for them, that adoption was now in the children's best interests, and that the petitioners' parental rights would have to be terminated before the children could be placed on an adoption registry. Based on that testimony, the DHS argued that the change in circumstances surrounding the children's intended guardianship, as well as the children's best interests, necessitated modification of the initial disposition and termination of the petitioners' parental rights so that the children could be adopted. The guardian ad litem echoed the DHS's position and urged the court to find that the DHS had proven "by clear and convincing evidence, that there [had] been a material change [in] circumstances" and argued that the DHS's proposed dispositional modification was in the children's best interests. The guardian ad litem also requested the court "to find the conditions that gave rise to the finding of abuse and neglect could not be corrected in any feasible amount of time," but asked the court to "use the proper wording" to enter those dispositional findings. Without addressing the guardian ad litem's request for dispositional findings, the court announced the following findings from the bench:

> The Court finds by clear and convincing evidence, there has been a change in circumstance in this case. The change in circumstance is that the prior proposed permanent placement is unable or unwilling to keep the children or take the children. The Court finds that modification of disposition would be in the child's best interests. . . . The Court finds it would be in the children's best interests to terminate their parents' parental rights, and that is the order of the Court.

Accordingly, the court granted the DHS's motion to modify disposition and terminate the petitioners' parental rights. In its subsequent November 20, 2024, dispositional order, the court found that the children's intended guardian was presently "unable or unwilling to

6

take the children," that "[t]he Motion to Modify Disposition filed by the Department [was] in the children's best interest," and that it was "in the best interest of the children to terminate the parental rights of the Respondent Parents[.]" It is from this dispositional order that the petitioners now appeal.

## II. STANDARD OF REVIEW

We recently established the following standard for reviewing circuit court orders in abuse and neglect proceedings:

> This Court reviews the circuit court's orders in abuse and neglect proceedings using the three following standards: (1) substantive rulings, such as whether the evidence supports a conclusion that a child has been abused or neglected or whether termination of parental rights is appropriate, are reviewed for abuse of discretion; (2) factual findings supporting substantive rulings are reviewed for clear error; and (3) to the extent review of the order implicates an issue of law or requires statutory interpretation, our review is de novo.

Syl. Pt. 1, *In re K.S.*, No. 24-740, __ W. Va. __, __ S.E.2d __ (2026). With this standard of review in mind, we consider the matter before us.

## III. DISCUSSION

On appeal, the mother asserts that she did not receive prior notice of the circuit court's November 13, 2024, hearing in which the petitioners' parental rights were terminated and the father asserts, among other things, that the court's decision to modify the initial disposition of the case and terminate his parental rights was not in the children's best interests. In contrast, the DHS and guardian ad litem argue that the parties had notice

7

of all relevant proceedings through constructive notice to their appointed attorneys and that the children's best interests and the evidence before the court supported its decision to modify the initial disposition and terminate the petitioners' parental rights. While the parties touch upon various legal issues in their arguments, they uniformly fail to identify the most problematic aspects of the proceedings below (discussed in detail *infra*), namely: 1) the court's improper dismissal of the parents as parties to the case following their voluntary relinquishment of their custodial rights (but not their parental rights) to the children; and 2) the court's exclusive focus on the statutory criteria for modifying the disposition of an abuse and neglect case and attendant failure to follow the dispositional procedures necessary to terminate the petitioners' parental rights. Nonetheless, we have held that

> [w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001). Even when parties fail to raise the issues on appeal, this Court will review a circuit court's procedural errors on its own accord when it is obvious from the appellate record that the court has substantially disregarded and frustrated that process.[6]

---

[6] *See In re H.B.*, 252 W. Va. 350, 359, 922 S.E.2d 350, 359 (2025) ("While Mother failed to raise [an] issue on appeal, we nevertheless find that . . . the circuit court substantially frustrated the process by disregarding the applicable statutes and rules

The record before us plainly demonstrates that the process was disregarded and frustrated here—initially, when the circuit court dismissed the parents as parties to the case following their voluntary relinquishment of only their custodial rights to the children and then, again, when the court terminated the petitioners' parental rights without following the requisite dispositional procedures. We therefore find it necessary to conduct our review of these procedural errors *sua sponte* and issue our decision on that basis.

### A. The Improper Dismissal

Following the initial disposition of the case, which involved the petitioners' voluntary relinquishment of only their custodial rights to the children, the circuit court dismissed the petitioners as parties to the case and excused their appointed attorneys from providing them with further representation. However, the petitioners retained their parental rights to the children at that time, and West Virginia Code § 49-4-601(h) clearly provides that "[i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful

---

regarding its adjudication and ultimate termination of Mother's custodial rights[.]"); *see also In re E.T.*, No. 17-1085, 2018 WL 1773180, at *3 (W. Va. Apr. 13, 2018) (memorandum decision) (reviewing adjudicatory defects *sua sponte* after concluding that the errors were "obvious in the record" and amounted to a "substantial disregard for the applicable rules and statutes such that vacation of the resulting dispositional order [was] warranted[.]"); *In re S.J.*, No. 19-0702, 2020 WL 31728623, at *6 (W. Va. June 15, 2020) (memorandum decision) (finding although the petitioner did not raise the issues, "the circuit court plainly and substantially disregarded and frustrated the orderly process of adjudication and disposition" by failing to conclude the petitioner's adjudicatory hearing or enter an adjudicatory order before terminating his parental rights).

opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses."[7] In addition to making parents necessary parties to abuse and neglect proceedings involving their children, this statutory requirement safeguards parental due process rights guaranteed by both the United States and West Virginia Constitutions. *See* U.S. Const. amend. XIV, § 1; W. Va. Const. art. III, § 10. This Court has long recognized that

> [i]n the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). As such, "a court or other arm of the State" may not terminate "the parental rights of a natural parent having legal custody of his [or her] child, without notice and the opportunity for a meaningful hearing." *Id.*, Syl. Pt. 2, in part.[8] Even when a parent does not have legal custody of his or her child

---

[7] *See also In re H.M.*, 251 W. Va. 333, 340, 912 S.E.2d 885, 892 (2025) (finding that circuit court erred in dismissing parent from abuse and neglect case at disposition when her custodial rights were terminated but her parental rights remained intact, as "only parents whose parental rights are terminated are excluded from participating in the permanent placement review hearings that follow disposition and that are required until permanency for the child is achieved") (footnote omitted) (citing W. Va. R. P. Abuse and Neglect Proc. 39(c) and W. Va. Code § 49-4-601(h)).

[8] *See also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (holding that the Due Process Clause, at a minimum, requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case"); *accord In re J.S.*, 233 W. Va. 394, 402-03, 758 S.E.2d 747, 755-56 (2014) ("The fundamental requirement of procedural due process in a civil proceeding is 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" (quoting *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976))).

10

at the time of disposition, the State must "provide the parents with fundamentally fair procedures" before it "may sever completely and irrevocably the rights of parents in their natural child[.]" *Santosky v. Kramer*, 455 U.S. 745, 747-748 (1982).[9] The West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings require that parties receive notice of scheduled proceedings and other important developments in a case;[10] thus, a parent's improper dismissal creates a significant risk that his or her parental rights may later be curtailed without prior notice or a meaningful opportunity to be heard. Therefore, we now hold that, consistent with West Virginia Code § 49-4-601(h), a circuit court may not dismiss a parent as a party to an abuse and neglect case if he or she retains any parental rights to a subject child. In the case before us, the circuit court erred as a matter of law when it dismissed the petitioners as parties to the abuse and neglect proceedings involving their children after they relinquished only their custodial rights to the children but retained their parental rights.

---

[9] In *Santosky*, the Supreme Court of the United States held that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child . . . does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State" and "[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." 455 U.S. 745, 753-54; *accord In re L.M.*, 245 W. Va. 751, 865 S.E.2d 493 (2021) (vacating order terminating noncustodial father's parental rights after finding that insufficient notice of proceedings violated his due process rights); *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 121 (1996) (holding that mother had due process right to appeal termination of parental rights while noting the distinction between "loss of custody, which does not sever the parent-child bond" and "parental status termination [which] is irretrievably destructive of the most fundamental family relationship" (internal quotation marks omitted)).

[10] *See generally* W. Va. R. P. Child Abuse & Neglect Proc. 10(c), 29, 30, 31, 36a, 37, 39(c), 47.

11

The allegations in the mother's brief, which the DHS does not contest on a factual basis, illustrate the importance of our holding. According to the mother, she contacted her attorney for assistance when she sought to regain custody of the children in August 2024, but her attorney informed her that he could not provide her with legal assistance because the circuit court had terminated his appointment to represent her following the initial disposition of the case. As a result, the mother took matters into her own hands and promptly filed a joint pro se motion, along with the father, seeking to restore their custodial rights to the children. However, the petitioners were not served with notice of the next-occurring permanency hearing that the court held in September 2024,[11] and they were, unsurprisingly, absent. It was during that hearing that the court reinstated the petitioners as parties to the case and reappointed their counsel to represent them. However, the mother's attorney maintains that he was unable to reach her after the September 2024 permanency hearing to inform her of her renewed party status and his reappointment to represent her, or to inform her when the court scheduled hearings to consider the parties' pending motions. As a result, the mother asserts that she did not receive prior notice of, or a meaningful opportunity to participate in, the hearing in which her parental rights were ultimately terminated.

---

[11] See *supra* note 4.

While not refuting the mother's factual allegations, the DHS contends that the mother had sufficient notice of all relevant proceedings leading up to the circuit court's termination of her parental rights by virtue of constructive notice to her attorney. The DHS argues that "it is a party's responsibility to keep apprised of [his or her] hearing date" and that the mother had a responsibility to "stay in contact with her attorney to learn of important court dates."[12] Yet, there is no evidence in the record demonstrating that the petitioners were even aware of their renewed party status or the reappointment of their counsel ahead of the November 13, 2024, hearing, such that they could have assumed the responsibilities averred by the DHS. There is a "widely recognized tenet of due process applied both in this Court and in courts around the country" that notice to a party of "any proceeding which is to be accorded finality [must be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re L.M.*, 245 W. Va. at 758, 865 S.E.2d at 500 (footnotes omitted) (quoting *Mullane*, 339 U.S. at 314). While constructive notice to a

---

[12] In support of these arguments, the DHS cites *In re J.F.*, No. 14-0091, 2014 WL 4347145, at *2 (W. Va. Aug. 29, 2014), where this Court found that the petitioner had notice of a dispositional hearing where "[t]he record [was] clear that petitioner was represented by counsel throughout the proceedings below and that counsel received proper notice of all hearings." The DHS also cites to *Winona National Bank v. Fridley*, 122 W. Va. 479, 10 S.E.2d 907 (1940), for the proposition that "it is a party's responsibility to keep apprised of his hearing date[.]" (We note that the correct citation for this quotation is *Schupbach v. Newbrough*, 173 W. Va. 156, 158, 313 S.E.2d 432, 435 (1984)). None of the DHS's cited authority involves a factual situation where, as here, the individual alleging lack of notice of a proceeding was not aware, in the first instance, of her reinstatement as a party or that counsel had been appointed to represent her due to an earlier, improper dismissal from the case.

party's legal counsel is typically sufficient, the petitioners' improper dismissal from the case disrupted their attorney-client relationships[13] and gave the mistaken impression that they were no longer entitled to participate in the case. In the aftermath of this significant procedural error, it could not be presumed that the petitioners had actual notice ahead of the November 13, 2024, hearing that they had been reinstated as parties to the case or that their attorneys had been reappointed to represent them.[14] Without the petitioners having actual notice of those critical developments, they could not have been aware of their responsibility, as the DHS describes it, to "stay in contact with [their] attorney[s] to learn of important court dates." Under these unique circumstances, constructive notice to the petitioners' counsel was neither "reasonably calculated" nor sufficient to apprise them of the hearing or to afford them a meaningful opportunity to present their objections to the DHS's motion to terminate their parental rights. *Id.* Consequently, we conclude that the petitioners' improper dismissal from the case substantially frustrated the procedural requirement in West Virginia Code § 49-4-601(h) that a "party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard" in abuse and neglect proceedings involving their children.

---

[13] *See* W. Va. Code § 49-4-601(f) (providing that parents of children involved in abuse and neglect proceedings have "the right to be represented by counsel at every stage of the proceedings and shall be informed by the court of their right to be so represented and that if they cannot pay for the services of counsel, that counsel will be appointed").

[14] In fact, the circuit court was on notice that the petitioners were unaware of their renewed party status at the outset of the November 13, 2024, hearing, because the mother's attorney informed the court that he had been unable to reach his client and the father's attorney informed the court that he did not know his client's whereabouts.

## B. Termination of Parental Rights

Additionally, when the circuit court terminated the petitioners' parental rights following the November 13, 2024, dispositional hearing, the court failed to follow a number of well-established dispositional requirements. West Virginia Code § 49-4-604(c)(6) requires a circuit court to find, prior to terminating parental rights, "that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is "necessary for the welfare of the child[ren]." Similarly, Rule 35(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings makes clear that "[w]hen termination of parental rights is sought and resisted [referred to herein as a "contested termination"], the court shall hold an evidentiary hearing on the issues thus made, including the issues specified by statute and make such findings with respect thereto as the evidence shall justify." Rule 36(a) requires the court's dispositional findings to be memorialized in a written dispositional order. This Court has emphasized the necessity of a dispositional hearing prior to a contested termination of parental rights, holding that "'the circuit court is required to conduct a disposition hearing, pursuant to [West Virginia Code § 49-4-604] and Rules 33[15] and 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, at which the issue of [] termination is specifically and thoroughly addressed.' Syl. Pt. 3, in part, *State ex rel. W. Va. Dep't of Health & Hum. Res. ex rel. Chastity D. v. Hill*, 207 W. Va. 358, 532 S.E.2d 358 (2000)." Syl. Pt. 2, *In re K.S.*, 246 W. Va. 517, 874

---

[15] We note that Rule 33 applies only to stipulated or voluntary dispositions and, thus, does not apply to the dispositional order that the petitioners challenge on appeal.

S.E.2d 319 (2022). We have also explained that the "necessary and vital" dispositional hearing is the setting in which the DHS is held to its burden of proof in a contested termination of parental rights. *Id.* at 525, 874 S.E.2d at 327; *see also In re K.V.*, 251 W. Va. 418, 914 S.E.2d 517 (2025) (vacating order terminating parental rights where the court impermissibly shifted the burden of proof onto the parent during the dispositional hearing). The State's burden of proving the factors necessary to support a contested termination of parental rights, by clear and convincing evidence, is constitutionally mandated. *See Santosky*, 455 U.S. at 747-48 ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence."); *see also State v. T.C.*, 172 W. Va. 47, 51, 303 S.E.2d 685, 689 (1983) (explaining that *In re Willis* set "the 'clear, cogent and convincing' standard of proof" and that the same standard was "adopted under Fourteenth Amendment Due Process principles in *Santosky v. Kramer*").

The record before us demonstrates that the circuit court erred when it terminated the petitioners' parental rights without following the requirements in West Virginia Code § 49-4-604(c)(6) or Rules 35 and 36. Instead, the court focused exclusively on the procedures required to modify the initial disposition of an abuse and neglect case pursuant to West Virginia Code § 49-4-606(a), which permits a circuit court to modify a dispositional order "if the court finds by clear and convincing evidence" that "a material change of circumstances [has occurred] and that the modification is in the child's best interests." During the November 13, 2024, hearing, the DHS presented testimony and

arguments as to whether modification of the initial disposition was in the children's best interests due to the unravelling of their intended guardianship; however, the DHS did not present any evidence or testimony demonstrating that the statutory factors necessary to support a contested termination of parental rights were satisfied. When granting the DHS's motion to modify disposition and terminate the petitioners' parental rights, the court announced from the bench only that it had found "by clear and convincing evidence, [that] there [had] been a change in circumstance in [the] case. . . . [and] that modification of disposition would be in the child's best interests." Similarly, the court's order memorializing its ruling included only the findings required to modify disposition, but not those required to terminate parental rights.[16]

Although the circuit court adopted the necessary findings to modify disposition, as a threshold matter, its analysis should not have ended there. In addition to setting forth dispositional modification standards, West Virginia Code § 49-4-606(a)

---

[16] We further note that the circuit court's passing references, during the hearing and in its order, to the guardian ad litem's request that "the Court . . . find the conditions give rise to the finding of abuse and neglect could not be corrected in any feasible amount of time" and adoption of "the Guardian ad Litems proposed conclusions of law" do not equate to the court, itself, adopting the findings that West Virginia Code § 49-4-604(c)(6) requires. A circuit court order, terminating parental rights, is inadequate when it "merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings . . . on the record or in the order[.]" *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620, Syl. Pt. 4, in part. And "[w]here [the DHS's] evidence at disposition fundamentally fails to inform the critical issues required by statute, mere talismanic reiteration of statutory 'buzzwords' in a dispositional order cannot salvage it." *In re K.S.*, 246 W. Va. at 529, 874 S.E.2d at 331.

specifically requires a court considering a motion to modify disposition to also "conduct a hearing pursuant to [West Virginia Code § 49-4-604, the statute governing disposition of abuse and neglect cases]." Moreover, nothing in West Virginia Code § 49-4-604 permits a court to bypass the procedures required for any manner of disposition simply because the disposition is a modified one. Accordingly, we now hold that whenever a circuit court modifies the initial disposition of an abuse and neglect case pursuant to West Virginia Code § 49-4-606, the court must satisfy the procedural requirements that apply to the new manner of disposition according to West Virginia Code § 49-4-604 and this Court's rules.[17] Here, because the court modified the initial disposition of the case to result in the involuntary termination of the petitioners' parental rights, West Virginia Code § 49-4-604(c)(6) required the court to find "that there [was] no reasonable likelihood that the conditions of neglect or abuse [could] be substantially corrected in the near future" and that termination was "necessary for the welfare of the child[ren]." *See In re R.B.*, 252 W. Va. 534, __, 923 S.E.2d 464, 470 (2025) (affirming the termination of parental rights upon a motion to modify disposition where the court properly made the requisite findings under

---

[17] We acknowledge that there may be cases in which a circuit court is asked to modify disposition of an abuse and neglect case from a contested termination of custodial rights to a contested termination of parental rights. In such cases, the requirements set forth in West Virginia Code § 49-4-604(c)(6) may already be satisfied when the court takes up the motion to modify disposition, since the requirements for a contested termination of custodial rights are identical to those required for a contested termination of parental rights. This was not the situation here, where the initial disposition of the case involved the petitioners' *voluntary* relinquishment of custodial rights to the children, a manner of disposition requiring different procedures from those required for an involuntary termination of parental or custodial rights. *Contrast* W. Va. Code § 49-4-607 and W. Va. R. P. Child Abuse & Neglect Proc. 35(a) *with* W. Va. Code § 49-4-604(c)(6) and W. Va. R. P. Child Abuse & Neglect Proc. 35(b).

West Virginia Code § 49-4-604(c)(6) to support termination in addition to the threshold determinations for modification under West Virginia Code § 49-4-606(a)). The court was also required to adopt these termination findings following an evidentiary dispositional hearing and to memorialize them in a written dispositional order. *See* W. Va. R. P. Child Abuse & Neglect Proc. 35(b); W. Va. R. P. Child Abuse & Neglect Proc. 36(a). Considering that the court failed to comply with any of the aforementioned requirements, it is obvious that the mandatory dispositional processes were substantially disregarded and frustrated in this case. *See In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620, Syl. Pt. 5. Furthermore, in the absence of appropriate dispositional proceedings, the circuit court never required the DHS to meet its constitutionally mandated burden of proving by clear, cogent, and convincing proof that termination of parental rights was warranted under West Virginia Code § 49-4-604(c)(6). *See In re Willis*, 157 W. Va. 225, 207 S.E.2d 129, Syl. Pt. 6.

In light of these errors, as well as the errors addressed in Section A of our discussion, *supra*, we conclude that "the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded [and] frustrated[.]" *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620, Syl. Pt. 5. Accordingly, we vacate the court's order modifying disposition and terminating the petitioners' parental rights and remand this matter for compliance with that process.

## IV. CONCLUSION

For the foregoing reasons, the circuit court's November 20, 2024, order modifying disposition and terminating the petitioners' parental rights is hereby vacated. Furthermore, these consolidated cases are remanded to the circuit court with instructions to conduct further proceedings consistent with this decision and, thereafter, to enter a dispositional order containing appropriate findings of fact and conclusions of law. The Clerk is directed to issue the mandate contemporaneously herewith.

Vacated and remanded with directions.

Mandate issued forthwith.